## Paul *versus* Stackhouse.

*Consideration of Contract of Suretyship.—Moral Obligation.—Contract to pay the Debt of another, within Statute of Frauds.*

1. One loaned money to another upon the promised security of a third person, taking a note from the borrower, payable in one year, which, three days after the year expired, was signed by the surety. In an action by the lender against the surety, it was *Held*, that, though a moral obligation alone was insufficient to support the contract of suretyship, yet the money having been loaned at the request of the surety, the consideration for his promise, though past, was continuing and valuable, and that his signature to the note was a completion and full execution of the promise upon that consideration.

2. The signature, connected with the original transaction, constituted one entire contract, evidenced by the note in writing, which was sufficient to take it out of the Statute of Frauds of 1855.

ERROR to the Common Pleas of *Bucks county*.

This was an action of *assumpsit*, brought August 11th 1860, by Elizabeth Stackhouse to the use of Miles Shin against Morris Paul, on a promissory note. To a declaration in the usual form the defendant pleaded *non assumpsit*.

On the trial the plaintiff offered in evidence the following promissory note:—

"Warminster, 4th mo. 2d 1857.

"One year after date I promise to pay to Elizabeth Stackhouse the sum of three hundred dollars, for value received, with lawful interest until paid.          ELWOOD SPROGLE.

MORRIS PAUL."

The interest for two years had been paid, as appeared by endorsement on the note.

The witness by whom the execution of the note was proven, testified that he wrote the note, saw the money paid to Sprogle, and saw him sign the note; that Miss Stackhouse was not willing to let Sprogle have the money unless Morris Paul would go his security; that on the 5th of April 1858 the witness took the note to Paul, telling him that Miss Stackhouse wanted his name on it as security; that Paul replied that he had promised Sprogle that he would go security on the note, but though he *ought* not to do it, he would do it; that he then signed his name

[Paul v. Stackhouse.]

to the note, saying he would pay her in a year or two ; but that he did not say when he had made this promise to Sprogle.

Plaintiff then proposed to show by this witness, that Elizabeth Stackhouse, at the time the money was borrowed, refused to let Sprogle have the money unless he would give security, that he then offered to give Morris Paul as his security, and she agreed to take him, and that she gave the money and took the note with Sprogle's signature only, with the understanding between her and Sprogle that he was to procure the signature of Paul to it afterwards as security.

Defendant objected to the evidence, on the ground that it is *res inter alios acta*—that Paul was not present at the alleged conversation, and is not to be affected by it; and that it is not the best evidence.

The court admitted the evidence, and defendant excepted.

The witness proceeded : " Miss Stackhouse, after the note was wrote, was not willing to let Sprogle have the money unless Paul's name was to it first ; and Sprogle said to her that Morris had promised to go security, but he did not know what kind of a note to write, and that therefore he did not get one wrote to get Paul's name to it, but he would get one wrote like it in a few days, and get Morris Paul's name to it ; and he would fetch it and give it to Elizabeth Stackhouse, and take the one that was wrote there, if she would let him have the money ; and then she agreed to give the money. When I went to Paul I did not mention to him any part of this conversation."

*Cross-examined :* " When Elwood Sprogle was asked about security he named Morris Paul, Charles Kirk, and Absalom Michener, as persons whom he could give. He said he had asked them all, and they were willing to go his security, and had promised him faithfully to do it. He said they had promised to go his security for $300 wherever he could borrow it."

*Re-cross-examined :* " She said any of them was good enough, but she said she would take Morris Paul. She preferred him."

The plaintiff proved defendant's admissions to the same effect by other witnesses, read the transfer of the note to Shin, and rested.

The defendant offered no evidence.

Under the charge of the court (SMYSER, J.) there was a verdict and judgment in favour of plaintiff for $330.55 damages and 6 cents costs. Whereupon defendant sued out this writ, assigning as cause for reversal the following matters, to wit:

1. The court below erred in admitting the testimony of Jonathan Stackhouse to prove that Elizabeth Stackhouse, at the time the money was borrowed, refused to let Sprogle have it unless he would give security, and that he then offered to give Morris Paul as his security, and she agreed to take him ; and that she

[Paul *v.* Stackhouse.]

gave the money and took the note with Sprogle's signature only, with the understanding between her and Sprogle, that he was to procure the signature of Paul to it afterwards as security.

2. The court below erred in charging the jury, that "the plaintiff further contends, that the evidence shows that Morris Paul, the defendant, promised Elwood Sprogle, before the latter went to Elizabeth Stackhouse to borrow the money, that he would go his security for the $300; that this gave Sprogle an implied authority to make a similar statement to Miss Stackhouse, if the latter required security; that Sprogle did so inform her; that the loan was made and credit given on the faith of this assurance and on Paul's credit, which the latter had authorized his principal to pledge, and on condition that his name should be procured afterwards for the money; and that these facts, if found by the jury, furnish a good and sufficient consideration to bind the defendant: and we are of opinion that this position is correct and well taken, if the facts are found by the jury."

3. The court below erred in charging the jury, that "in regard to the Statute of Frauds of 1855, we are of opinion it has no application, because any promise made by defendant, on which he could be bound, independent of the statute, was put in writing when he affixed his signature to the note, evidencing the promise thereby."

*Geo. Lear*, for plaintiff in error.

*C. E. & J. L. Dubois*, for defendant in error.

The opinion of the court was delivered, March 1st 1861, by

WOODWARD, J.—The contract of suretyship rests necessarily upon a consideration that is valuable. The consideration may be in the form of an inconvenience to the party promised, or of an advantage to be gained by either the principal debtor or the surety, and it may be ever so slight; but in the one form or the other, a consideration which the law denominates valuable, must be proved, or a surety cannot be made legally liable. What is called a moral obligation, is insufficient to support the promise of a surety. It is often said in the books, as was laid down by Gibbs, J., in Lee *v.* Muggeridge, 5 Taunton 36, that wherever there is a moral obligation to pay a debt, or perform a duty, a promise to perform that duty or pay that debt will be supported by the previous moral obligation, but it is believed that in all cases which may be cited in support of the rule, there was an original consideration beneficial to the party promising, and which might have been enforced on an implied promise, had it not been for some statute provision, or some positive rule of law, which, with a view to the general good, exempted the party

[*Paul v. Stackhouse.*]

from *legal* liability in the particular instance. See the cases cited in note to Edwards *v.* Davis, 16 Johns. 284. See also Mills *v.* Wyman, 3 Pickering 207; Smith *v.* Ware, 13 Johns. 257; and C. J. Gibson's observations in Kennedy *v.* Ware, 1 Barr 445.

Many of these cases have reference to the action of *assumpsit* against the original or principal promissor; but they apply all the more forcibly to the action when brought against a surety, for his liabilities are measured by no equitable or moral standard, but only by rules of sheer law.

The plaintiff in error was not to be holden, therefore, on the ground of a prior moral obligation, and the judgment against him cannot be supported on that footing. Still, however, we think it sustainable. Taking the evidence contained in the first and second specifications of error, it may, without undue license, be treated as Paul's request to Miss Stackhouse, to lend Sprogle the money in question. He promised Sprogle he would go his security, and this was an authority to the latter to say so to the creditor. Sprogle communicated it to Miss Stackhouse, and she let Sprogle have the money on the faith of Paul's promise thus sent to her. What was this but saying, Let Sprogle have the money, and I will be his surety for the repayment? The money was loaned, and a note taken at a year, signed only by Sprogle. Three days after the year was up, Paul signed it. There was his contract fully completed; but completed, it is said, on a consideration that was past and executed.

It is true, as a general rule, that the consideration which binds a surety must be executory; but where the thing was done at the instance or request of the surety, a past consideration binds him. Pitman, in his excellent little treatise on Principal and Surety, p. 57, Law Library, vol. 40, states the rule in regard to past considerations, by the instance of the old case of Hunt *v.* Bate, 3 Dyer 272, where A.'s servant was arrested in London for a trespass, and J. S., who was well acquainted with the master, bailed the servant, and afterwards A., for his friendship, promised to save him harmless, and J. S. was compelled to pay the condemnation money, it was held that an action did not lie upon A.'s promise, because the bailing, which was the consideration, was past, and executed before. A consideration, therefore, says this writer, which is executed, is not sufficient to support a subsequent promise, *unless, indeed, the act was done at the request of the party promising, for then the promise is not a naked one, but couples itself with the precedent request, and is therefore founded on a good consideration.* Some of the cases he cites in support of the latter branch of the rule, do not sustain the proposition; but others do. It was said by Mr. Justice Wilmot, in 1765, in Pillans & Rose *v.* Mierop & Hopkins, 3 Burrows 1671,

2 Wᴿ.—20

[Paul *v.* Stackhouse.]

that it was then settled that where the act is done at the request of the person promising, it will be a sufficient foundation to graft the promise upon.    He pronounced many of the old cases, and some of the modern ones that were inconsistent herewith, to be "strange and absurd," and declared that the rule as to past considerations "has been melting down into common sense of late times."

It is necessary to lay a precedent request in cases where the consideration was executed and bygone at the time of the promise: 1 Saund. Rep. 264 a, and the cases *in notes*.    Possibly the plaintiff's *narr.* is defective in this respect, but as a copy of it has not been furnished us, we will not presume it defective after verdict and judgment.

On this ground, therefore, that the money was loaned to Sprogle at the instance and request of Paul, we hold him bound by his subsequent promise.    The consideration for his promise, though past, was a continuing and valuable consideration, and his signature to the note was a completion and full execution of the promise upon that consideration.    It is not essential that a consideration move to the surety—it is sufficient if the principal derive a benefit from the promise.

This is the ground upon which the judgment in Hemphill *v.* McClimans, 12 Harris 367, ought to have been placed.    The son of a married woman contracted with builders for the stonework of a grist-mill.    After part of the work had been done, they refused to proceed further without security for payment, and Mrs. Hemphill then promised to see them paid.    They went on and finished the work; she became discovert, and after that renewed her promise to pay.    Her first promise was void because of the disabilities of marriage, and her promise after discoverture was resisted for want of consideration.    A majority of the court insisted on resting her legal liability on her moral obligation, and that has made the case a mischievous precedent.    A moral obligation no doubt there was to pay for labour which she had induced others to expend for the benefit of her son, but like most moral obligations it was enforceable in *foro conscientiæ*, rather than in a court of law.    The law compels nobody to become surety for another.    The relation of principal and surety rests wholly in contract, and the law enforces contracts only that are founded in some consideration.    But the work having been finished at Mrs. Hemphill's instance, her subsequent promise, when she became able to contract, should have been coupled with the precedent request, and thus a valid consideration, though past and bygone, would have been found.

There is only one other point in the case in hand.    It is said the promise of Paul, being for the debt of another, is within our Statute of Frauds of 1855.    The court answered that his

signature to the note was a sufficient note in writing to take it out of the statute. Counsel argue that this is assuming the whole matter in dispute, because the only promise that they see any consideration for was the parol promise, and that would be clearly within the statute.

But the mistake of counsel consists in not connecting the signature of the note with the original transaction a year previously. Regarding the parts of the transaction as constituting one whole contract, and referring the signature of the note to the original consideration, the court's answer to the point was complete. There was a note in writing to evidence the contract, and the consideration was acknowledged on the face of the writing. It was not, therefore, within the statute, and being in point of fact founded on a sufficient consideration, was properly enforced.

The judgment is affirmed.