# Goldsmith *v.* Stocker.

*Contracts—Promise to pay the debt of another—Statute of frauds—Written instruments—Alteration—Case for jury.*

1. A note given as collateral security to protect the holder against liability by reason of his endorsement of a promissory note of a third person, and having on the back an endorsement reading "For note Reading National Endorsed Isaac Goldsmith, J. Jacob Longenderfer and J. Henry Stocker," is a sufficient memorandum of a promise to pay the debt of another to satisfy the statute of frauds.

2. Where, in an action on the collateral note, it appeared that after the payment of the original note, the holder of the collateral note desired to retain it as security against liability on another note which he had endorsed, and that his son, in the defendant's presence, struck out the words "Reading National" from the endorsement of the collateral note, and inserted the words "Berks County Trust Company," and that at the expiration of the note

which plaintiff had endorsed he renewed his endorsement thereon, it was for the jury to determine from conflicting evidence whether the alteration in the endorsement of the collateral note was made with defendant's consent.

3. In such case it was error for the court to refuse to instruct the jury that there could be no recovery unless the alteration was made with defendant's consent.

Argued March 1, 1915. Appeal, No. 254, Jan. T., 1914, by Katharine B. Stocker, defendant, from judgment of C. P. Berks Co., Sept. Term, 1910, No. 6, on verdict for plaintiff in case of Samuel Goldsmith and Solomon Goldsmith, executors of Isaac Goldsmith, v. J. Henry Stocker and Katharine B. Stocker. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Reversed.

Assumpsit on a promissory note. Before ENDLICH, P. J.

From the record it appeared that some time prior to the date of the note in suit, J. Henry Stocker and J. Jacob Longenderfer, for the purpose of raising $5,000, for an enterprise in which they were about to engage as partners, made two notes each for $2,500, which they induced Isaac Goldsmith to endorse, upon their promise that if they were successful they would give him a share in the enterprise. To this transaction, Katharine B. Stocker, the appellant, defendant below, was a stranger.

One of these notes, originally discounted in the Neversink Bank, was subsequently carried in the Reading National Bank; the other was discounted in the Berks County Trust Company. According to the understanding of all parties to these notes, the former was considered Longenderfer's part of the indebtedness, the other Stocker's. The note in suit was given to the plaintiff by J. Henry Stocker and Katharine B. Stocker, his mother, the appellant, as collateral security for the note then in the Reading National Bank. On the back it was marked: "For note Reading National Endorsed Isaac

Goldsmith, J. Jacob Longenderfer and J. Henry Stocker"
—this memorandum having been put upon it by J.
Henry Stocker prior to its delivery to the plaintiff.

Subsequently, to wit, on October 20, 1908, the note
in the Reading National Bank was paid by the giving
of a new note in a larger amount accompanied by cer-
tain mortgage security furnished by Longenderfer, and
thereupon the liability of the appellant on the note in
suit was discharged.

On the evening of the same day, the plaintiff and his
son, Solomon, called at the home of the appellant and
asked her to give him a new note to secure him against
liability upon his endorsement of the note in the Berks
County Trust Company. She refused to give a new
note, whereupon the plaintiff told her that the old note
would have to be changed. Thereupon, the plaintiff's
son, at his father's direction, changed the endorsement
on the note in suit by striking out the words "Reading
National" and inserting "Berks County Trust Co.," such
change being made in the presence of Mrs. Stocker and
the other parties to the note. Mrs. Stocker, however,
did not re-execute the old note in its altered form or
sign any memorandum assenting to the alteration.

After the alteration had been made, the appellant
requested the plaintiff to renew the note in the Berks
County Trust Company, which the plaintiff thereupon
agreed to do.

The note in the Berks County Trust Company was
renewed with the endorsement of Isaac Goldsmith un-
til April, 1910, when it was protested and paid by Gold-
smith, who thereupon brought suit on the collateral
note dated September 17, 1908, originally given by the
defendants to secure the payment of the note in the
Reading National Bank.

Verdict for plaintiff for $3,039.50 and judgment there-
on. Katharine B. Stocker appealed.

*Errors assigned,* were various rulings on evidence, instructions to the jury, the refusal of the court to direct a verdict for defendant, and to enter judgment for defendant n. o. v.

*J. Rothschild,* of *Fox & Rothschild,* and *E. H. Deysher,* for appellant.—An essential part of the memorandum or note contemplated by the Statute of Frauds had to be established by parol evidence: Moore v. Eisaman, 201 Pa. 190; Martin v. Duffey, 4 Philadelphia 75.

The note did not satisfy the requirements of the statute because it was written and signed antecedently to the defendant's promise which is sought to be enforced and was therefore not intended to relate thereto.

The note in question was not "signed" within the meaning of the Statute of Frauds: Hess's Est., 150 Pa. 346; Paxson v. Nields, 137 Pa. 385; Maule v. Bucknell, 50 Pa. 39; Haverly v. Mercur, 78 Pa. 257.

*H. P. Keiser,* with him *J. Wilmer Fisher,* for appellee. —It was permissive to prove orally the consideration upon which the contract rested: Bowser v. Cravener, 56 Pa. 132; Walters v. McElroy, 151 Pa. 549; Moore v. Eisaman, 201 Pa. 190; Hall v. White, 123 Pa. 95; Brodhead v. Reinbold, 200 Pa. 618; Fitzpatrick v. Engard, 175 Pa. 393.

OPINION BY MR. JUSTICE ELKIN, April 19, 1915:

The main contention of appellant is that judgment non obstante veredicto should have been entered upon the whole record. After mature deliberation we have concluded that this position is not tenable. As general propositions of law applicable to cases arising under our statute of frauds and perjuries there is great force in what learned counsel for appellant have stated in their printed argument. But in considering the application of the law, the facts have a most important bearing and frequently must be given controlling effect. In

the case at bar the note in suit was given as collateral by the mother and son to secure the indebtedness of the latter. As to the mother it was an undertaking to answer for the debt or default of another within the meaning of our Act of April 26, 1855, P. L. 308, which requires that the agreement, memorandum or note "shall be in writing and signed by the party to be charged therewith, or some other person by him authorized." The note was in writing and it was signed by appellant as the statute requires. On the back of the note was a memorandum showing what indebtedness was intended to be secured by this collateral undertaking. It appears from the evidence that Jacob Longenderfer and Henry Stocker became associated in a business enterprise requiring the investment of $5,000, and that each of the parties named was to contribute one-half of this amount. Loans were negotiated through the banks for the entire capital investment, one-half at one bank and the balance at another financial institution. There was some kind of an understanding between the parties that Stocker should take care of the note of $2,500 at the Reading National and Longenderfer the same amount at the Berks County Trust Company, but just what this arrangement was does not clearly appear. It seems to have been more of a convenience to the parties themselves than anything else, because as we understand the testimony each party remained liable for the whole indebtedness if the banks chose to enforce their demands against either or both parties. It is true appellant at the time she signed the collateral note in suit understood that the note of her son Henry had been discounted at the Reading National and with this understanding in mind the memorandum on the back of the note here involved was made. This was not true in fact because the note for $2,500 discounted at the Reading National and the note for the same amount at the Berks County Trust Company were both signed by Jacob Longenderfer and Henry Stocker as original makers, and each was

liable for the full amount of both notes. That the note at the Reading National was not regarded as the separate and individual indebtedness of Henry Stocker is shown by what occurred. Goldsmith, the endorser, demanded further security as a protection against loss on account of his endorsement, and Longenderfer executed a mortgage for this purpose as well as to secure an additional loan. The mortgage called for payment of $3,500.00 and when executed the $2,500.00 note at the Reading National was paid. If the transaction had been closed at this point clearly appellant would have been discharged from further liability on her collateral note. But the payment of this note did not close the transaction and what subsequently occurred gives rise to the present litigation. While the note at the Reading National was paid, Goldsmith was still liable as endorser on the note of Longenderfer and Stocker for $2,500.00 at the Berks County Trust Company. In this situation Goldsmith testified that he and his son waited upon appellant and asked that she give a new note to indemnify him against loss as an endorser of the note held by the Berks County Trust Company. This she refused to do, but according to his testimony, she did agree to let the old note stand as collateral for that indebtedness. In carrying out this intention the memorandum on back of the note in suit was changed to make it cover the note for $2,500.00 purchased by the Berks County Trust Company. It is alleged that this change was made in the presence of appellant and with her approval and assent, and that she subsequently ratified her undertaking by paying interest on the loan at certain renewal periods. The testimony is contradictory as to many of the essential and controlling questions involved in the controversy, but we have concluded that it was a case for the jury. What was said by this court in Paul v. Stackhouse, 38 Pa. 302, applies with great force to the facts of the present case. When regarded as one entire transaction many of the difficulties here presented disappear.

The mother desired to assist her son and for this purpose undertook to answer for his indebtedness to the amount of $2,500.00, which according to her information was carried as a loan at the Reading National, but when that note was paid by Longenderfer and not by her son, there still remained unpaid the note in the same amount at the Berks County Trust Company. Her son was liable on this note and it seems most reasonable that she should agree to have the collateral note cover this indebtedness by her son, especially when Longenderfer had paid the note at the Reading National. However, all of this depends upon the evidence and in a case of this kind nothing can be assumed or taken for granted.

By the third assignment it is complained that the learned court below erred in not affirming defendants' fifth point submitted at the trial. This point in substance asked the court to instruct the jury that there could be no recovery in the case if they found from the evidence that appellant had at no time promised to answer for the debt or default of Jacob Longenderfer and Henry Stocker in the payment of the note at the Berks County Trust Company by writing signed by her or by some other person authorized to sign for her. This point raised the decisive question in the case and should have been affirmed with such explanation as the trial judge chose to make regarding the facts upon which it was predicated. This cannot be regarded as harmless error because whether she did agree to answer for the payment of the note at the Berks County Trust Company was the controlling question upon which the right to recover depended. Whether her undertaking was in writing so as to meet the requirements of the Act of 1855 depends upon whether she authorized Solomon Goldsmith to make the alteration of the memorandum on the back of the note. As to this most important and indeed decisive question the testimony is in direct conflict. Hence the necessity of clear and concise instructions to the jury in order that they might reach an in-

telligent conclusion upon the exact point involved. In this connection it is important to determine whether Solomon Goldsmith in making the alteration acted as the agent of his father or of appellant. But in passing upon this question all that the parties said and did at the time may be taken into consideration in determining the fact. In view of what has been said that part of the charge complained of in the fifth assignment can scarcely be said to be accurate and it may have been misleading. We agree with the views of the learned court below upon the question of consideration, and if the jury find that appellant authorized Solomon Goldsmith to make the alteration for her and at that time Isaac Goldsmith agreed to renew his endorsement of the note so as to have it carried at the trust company, and that subsequently appellant requested the endorser to have the note renewed, this would be such a valuable consideration as to support the promise to pay the debt of another if in default.

Since the case is to be again tried we will refrain from further comment. Other matters complained of in the argument can be called to the attention of the trial judge and no doubt will be given proper consideration.

Judgment reversed with a venire.