### KLEMAN v. ANHEUSER-BUSCH BREWING ASS'N.

(Circuit Court of Appeals, Third Circuit. December 18, 1916.)

No. 2147.

1. FRAUDS, STATUTE OF ☞159—SUFFICIENCY OF MEMORANDUM—VARIANCE— QUESTION FOR JURY.

A writing is not sufficient as a memorandum to take a prior oral agreement out of the statute of frauds, if it varies in terms substantially from the oral agreement; but where the evidence is conflicting as to the terms of the agreement, the question is one of fact for the jury.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 378; Dec. Dig. ☞159.]

2. GUARANTY ☞7(4), 25(3)—REQUISITES AND VALIDITY—NOTICE OF ACCEPTANCE.

While an offer to guarantee the debt of another does not become a contract of guaranty until the offer is accepted, and notice of acceptance and reliance thereon has been given, no formal notice is required, and proof of notice may be made, as of other facts, by evidence either direct or circumstantial.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 9, 104; Dec. Dig. ☞7(4), 25(3).]

3. APPEAL AND ERROR ☞169—REVIEW—MATTERS NOT PRESENTED TO TRIAL COURT.

In general, an appellate court will not review an alleged error of a trial court in a matter to which its attention was not directed, which was not passed upon, and with respect to which no objection was made, no exception noted, and no error assigned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018– 1034; Dec. Dig. ☞169.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

---

Action at law by the Anheuser-Busch Brewing Association against John P. Kleman. Judgment for plaintiff, and defendant brings error. Affirmed.

George E. Alter and Ralph Strawbridge, both of Pittsburgh, Pa., for plaintiff in error.

W. S. Dalzell, of Pittsburgh, Pa. (Robb & Miller and Dalzell, Fisher & Hawkins, all of Pittsburgh, Pa., of counsel), for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The transaction out of which this case arose appears in the opinion of this court when the case was last here for review. 219 Fed. 522, 135 C. C. A. 272. Only a brief outline of the facts is necessary to a consideration of the questions raised by this writ of error.

Kleman (the defendant below) owned a saloon property in Pittsburgh, in which he had conducted the liquor business. He sold the business to Wiese and received in part payment Wiese's notes endorsed by the Tube City Brewing Company. Aside from his obligation to the Tube City Brewing Company for its endorsements, Wiese was indebted to that company for money borrowed, and was accordingly bound, either in policy or by contract, to sell its beer in his saloon. Complaints arose concerning the beer; business fell off; and Wiese's affairs generally became so alarming, that Kleman, being interested in Wiese both as landlord and creditor, undertook to negotiate for him a new loan, whereby he could discharge his indebtedness to the Tube City Brewing Company and get from under his obligation to sell its beer.

After failing in one or two attempts with other breweries, Kleman succeeded in interesting the Anheuser-Busch Brewing Association in the matter. Upon Kleman's representation that the saloon would handle its beer and that he would be responsible for the payment of the loan, the Brewing Association loaned Wiese $15,000 under an agreement, bearing date July 20, 1906, calling for payment by installments, covering a period of years. The obligation to the Tube City Brewing Company was discharged with the money loaned, and the beer of the Brewing Association was put on sale. The change in beer, however, did not change the trend of Wiese's failing business. In December, 1907, Wiese was verging on bankruptcy, and the Brewing Association entered judgment against him for a balance of $8,000 due on the loan. This was embarrassing to McMorris, the local representative of the Brewing Association, through whom the loan had been negotiated and by whom also it had been guaranteed. So upon the day of the entry of the judgment, McMorris and Kleman entered into a written agreement between themselves respecting payment to the Brewing Association of any balance remaining due after exhausting the resources of Wiese. In this agreement appears the first written reference to Kleman's oral undertaking with the Brewing Association to guarantee Wiese's debt. It is as follows:

"Whereas the said John P. Kleman, party of the first part hereto, at the time of the said loan to the said Wiese, guaranteed the repayment in full of said loan, *except interest*, to the said Brewing Association, and undertook himself to pay so much thereof as should be due at the time of any default upon the part of the said Wiese, and that said Brewing Association *made said loan* to the said Wiese *upon the strength, faith and credit of the said guarantee:*

"That therefore * * * the said Kleman will * * * pay to the party of the second part, local representative as aforesaid, any balance of said debt, without interest, which the said Anheuser-Busch Brewing Association will be unable to collect from the estate of the said Wiese in bankruptcy;" etc.

The Brewing Association brought this action against Kleman, and, by separate counts, declared on the oral contract and the written memorandum, but subsequently amended so as to limit the action to the oral contract. At the first trial, the court directed a verdict for the Brewing Association, upon the theory that the action was on the writing and that the writing was a binding obligation upon Kleman. This court reversed the judgment, first, because the writing was between Kleman and McMorris, both citizens of the State of Pennsylvania, in which the action was brought, and the court had no jurisdiction of an action on that obligation; second, because the writing between Kleman and McMorris vested no right of action in the Brewing Association; and third, because the Brewing Association had declared on the oral promise of Kleman, holding that Kleman's memorandum, subsequently written, was not an additional promise to the Brewing Association creating a new liability, but was merely evidence to be used in proving his prior promise and in taking that promise out of the Statute of Frauds. 219 Fed. 522, 135 C. C. A. 272. The second trial was conducted conformably with the opinion of this court, and the trial court submitted to the jury the question of the fact, as well as of the terms, of Kleman's oral contract of guaranty, under proper instructions as to Kleman's memorandum of that contract, as evidence tending to prove his prior oral promise and as a writing sufficient to take that promise out of the Statute of Frauds. Act of 1855, P. L. 308, § 1. The verdict was for the Brewing Association, and Kleman sued out this writ.

The assignments of error are classified by the defendant into three abstract propositions of law. In these, certain principles of law are invoked, concerning which we apprehend there can be no dispute. Our concern is with respect to their application to the facts of the case.

[1] The first proposition or question involved, as formulated by the defendant, is whether the writing relied upon as a memorandum of a prior oral guaranty of the debt of another, is sufficient, when the alleged oral contract of guaranty, *as proved by the plaintiff*, differs materially from the recital of the contract in the memorandum.

This question is predicated upon the long settled principle that, if, after an oral contract has been made there is a writing stating what it was, and conformable to the real contract, the Statute of Frauds is satisfied thereby, McLean v. Nicoll, 7 Hurlstone and Norman, 1024; or, stated conversely, that if a writing offered as a memorandum of an oral agreement, differs substantially from the agreement as made, the Statute of Frauds has not been complied with. It is elementary that

the writing must be a memorandum of the contract, for if it states something different from the contract, it manifestly is not a memorandum of the contract, but is a memorandum of something else, and the statute is not satisfied. This principle is amply supported by the authorities, and perhaps is no better stated than by Wood in his work on Frauds, section 345, as follows:

"In order to make a writing of this character sufficient, it must admit the substance of a previously completed contract between the parties. It cannot be used to make, but only to prove a contract already made; and although it admits the contract, if it annexes conditions to it or otherwise varies it, it has no effect as a memorandum."

To the authorities cited in support of this statement, the following may be added: Dale v. Humphrey, 1 Ellis, B. & E. 1014 (E. C. L. R. 96); Fitzmorris v. Bayley, 9 H. L. Cas. 78; Cooper v. Smith, 15 East, 103; Davis v. Shields, 26 Wend. (N. Y.) 341; Title Guaranty & Surety Co. v. Lippincott, 252 Pa. 112, 97 Atl. 201; Paul v. Stackhouse, 38 Pa. 302; Shively v. Black, 45 Pa. 345; Eilbert v. Finkbeiner, 68 Pa. 243, 8 Am. Rep. 176; Hewes v. Taylor, 70 Pa. 387; Goldsmith v. Stocker, 249 Pa. 180, 94 Atl. 829.

But in employing this principle in his first proposition, the defendant assumes as a fact and asserts that in truth the terms of the oral contract of guaranty are, *upon the plaintiff's proofs*, materially different from those recited by the defendant in the written memorandum. We fail to find that this assumption is warranted by the evidence. The trial court found a conflict in the evidence as to the terms of the oral contract, and instructed the jury that if they found its terms different from those recited in the memorandum, the plaintiff could not recover. The court therefore directed the attention of the jury to the question of variance between the contract as recited in the memorandum and the oral contract sued upon, and instructed them, pointedly and correctly, as to the consequence of a variance.

The question of the alleged variance arose with respect to the obligation of the guarantor to pay interest, the testimony being that Kleman promised to "stand back of the loan," and was silent on the subject of interest, while the written memorandum recites the contract of guaranty to be for "the repayment in full of said loan, except interest." It thus appears on Kleman's own statement in his memorandum of the contract, that the guaranty did not extend to interest on the loan. This was his testimony as to the terms of his oral contract. He thus concedes that the character of the loan was such as neither to induce nor require him to guarantee anything further than the principal. Into the character of the transaction the jury was properly permitted to inquire, in order to ascertain the character and the extent of Kleman's guaranty. They found the parties silent upon the subject of interest. From that silence, as shown by their verdict, the jury deduced the inference, in accord with the fact conceded by Kleman, that the contract of guaranty extended only to principal. While a contract of guaranty for the payment of the debt of another, that does not include payment of interest, may, indeed, be unusual, yet as such an unusual contract was said by Kleman to

be his contract in this case, it is not repugnant to the situation or unreasonable for the jury to find the same fact by sustainable inferences from the evidence. Having found the terms of the oral contract precisely as Kleman had himself recited them in his memorandum, the contention that the court erred in not directing a verdict for the defendant on the ground of variance in terms between the oral contract and the written recital of the contract, is disposed of.

[2] The second matter charged as error was the court's refusal to direct a verdict for the defendant, because there was no evidence of notice by the Brewing Association to Kleman that his offer to guarantee the loan to Wiese had been accepted by the Brewing Association and the loan made in reliance upon it.

It is not necessary to quote authority for the proposition that an offer to guarantee the debt of another does not become a contract of guaranty until the offer is accepted and notice of its acceptance and reliance thereon has been given, nor need we cite authority to show that no formal terms of notice are prescribed either by statute or rule of law to ripen an offer into a contract. There is in this case no evidence of a formal notice of acceptance. Although Kleman's defense to this action, with respect to the original promise, consisted of a denial that the loan was made upon his solicitation or upon his oral promise to guarantee its payment, and with respect to the written memorandum, that he signed the writing without knowing that it contained a recital of the alleged prior promise, there is abundant evidence from which the jury might find that from the moment the loan was made, Kleman knew that it was made upon the strength of his guaranty. There was evidence, preponderant in character, that the loan was effected by Kleman for Wiese and not by Wiese for himself. Wiese was in failing circumstances, and besides being his tenant, was indebted to Kleman in a considerable sum. Kleman was interested in keeping Wiese's business going in order that Wiese might pay his rent and discharge his debt to him. The transaction of the loan was not merely suggested by Kleman but was conducted and completed by him. It was upon his request that the Brewing Association considered the loan. It was upon his application that the loan was made, and, when made, the money was paid not to Wiese but to Kleman, and by him applied in part to Wiese's debt to the Tube City Brewing Company, and thereby to the release of Wiese from his obligation to sell its beer. There was also evidence to the effect that Kleman long knew of his guaranty, for, beginning shortly after the loan was made, he told Wiese from time to time that he must meet his periodical payments to the Brewing Association or else he would have to meet them himself; and lastly, in the memorandum of writing, with the contents of which the jury evidently found, notwithstanding his protestations, that he was familiar, Kleman admits his knowledge (which may be inferred was acquired by notice of some kind) that his offer to guarantee the loan was accepted, by saying:

"The said Brewing Association made said loan to the said Wiese upon the strength, faith and credit of said guaranty."

Proof of notice may be made, as of other facts, by evidence either direct or circumstantial. In this case there is no direct evidence of notice, but Kleman's relation to the loan transaction and his conduct in its inception, throughout its negotiation, and in its completion, constitute circumstances from which may very reasonably be drawn an inference of notice. We are of opinion that the court committed no error in refusing to decide as a matter of law and in submitting to the jury the question, "whether the defendant was given notice of the acceptance of the defendant's guaranty"; and also, "whether he had notice of such acceptance within a reasonable time after such guaranty was made," for until the jury found from the conflicting testimony the fact and the time of notice, there could be no decision as to whether the notice was given within a reasonable time. The finding of the jury upon this submission is conclusive.

The remaining error charged to the court was its refusal to direct a verdict for the defendant, on the ground, as stated by the defendant, that the guarantor of the payment of a loan cannot be held by the loaner where the loan is made subject to oppressive conditions which may diminish the borrower's ability to repay, without the guarantor being notified of or agreeing to the imposition of such conditions.

[3] It appears that in the contract between Wiese and the Brewing Association, Wiese agreed to handle and sell exclusively the Anheuser-Busch draught beer. This is the undertaking which Kleman claims is onerous and of which, as guarantor, he had no knowledge, and because of which, therefore, the court should have directed a verdict in his favor. No point or request for action by the trial court upon this contention can be found in the record. No reference is made to it as a ground for a directed verdict, nor does it appear in rulings on the evidence, or in the law, as charged or refused to be charged. In other words, the matter does not appear to have been raised before or considered by the trial court at all, and there is no exception or specific assignment of error covering it. While we are prompt to act upon our rule to notice a plain error not assigned, when such action is manifestly necessary to administer justice, we are not inclined in this instance to depart from the general rule that an appellate court will not review an alleged error of a trial court in a matter not directed to its attention and not passed upon, and with respect to which no objection has been made, no exception noted and no error assigned by the party complaining on appeal. We may say, however, because of the emphasis of the insistence with which this point was urged, that it is difficult to believe that Kleman was ignorant of the provision which he now claims to be so oppressive as to annul the contract, because it appears that it was he who suggested the change of beer and who got the Anheuser-Busch beer into the saloon as a means of improving his tenant's business. This was the very thing which induced him to procure the loan from the Brewing Association and guarantee its payment. It was testified that in negotiating the loan he represented that the saloon would handle the Brewing Association's product, and it is certain that the moving cause for the change of the loan from the Tube City Brewing Company to the Anheuser-Busch Brewing As-

sociation was to procure a change of beer. Instead of such an undertaking being classed as an onerous or oppressive undertaking, we believe it is quite a customary one. Brewers do not usually advance money to saloon-keepers without an understanding that their product is to be sold by them, either exclusively or together with other designated brands, and it was from under just such an obligation to the Tube City Brewing Company that Kleman sought to relieve his tenant with respect to its beer, and succeeded in doing so by securing for him a new contract with another brewing company containing a like obligation for the exclusive sale of its beer. As Kleman appears to have been the active instrument in making the contract of loan and as the jury have found that he had undertaken to guarantee its performance, it is difficult to believe that he did not know and acquiesce in its terms. In declining to consider further the question of the alleged oppressive undertaking in the contract of loan because it was not raised before and passed upon by the trial court, we are inclined to believe there is a strong probability that no injury is being done the defendant. We find no errors in the trial of this cause.

This case has been in the courts for several years. The protracted character of the litigation, as well as the vigor with which it has been conducted, is a justification for the unusual length of our discussion of its final phases.

The judgment below is affirmed.